UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| CATHY PENN IN HER CAPACITY AS<br>GUARDIAN OF MATTHEW LALLI, of<br>Waldoboro, Maine,<br><br>Plaintiff<br><br>    v.<br><br>KNOX COUNTY, as a duly designated County<br>in the State of Maine existing under the laws of<br>the State of Maine,<br><br>and<br><br>KNOX COUNTY SHERIFF'S DEPARTMENT,<br>as a Department of the County of Knox,<br><br>and<br><br>KNOX COUNTY JAIL, as a facility controlled by<br>The Knox County Sheriff's Department,<br><br>and<br><br>DONNA DENNISON, in her capacity as Knox<br>County Sheriff, of Tenants Harbor, Maine,<br><br>and<br><br>JULIE STILKEY, of Richmond, Maine,<br><br>and<br><br>ANGELA ESCORSIO, of Tenants Harbor,<br>Maine, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action<br>Docket No. 2:11-CV-363-NT<br><br>AMENDED COMPLAINT AND<br>DEMAND FOR JURY TRIAL |

1

and                                                        )
                                                           )
CHRISTOPHER TRUPPA, of Augusta, Maine,                     )
                                                           )
and                                                        )
                                                           )
ROBERT WOOD, of Warren, Maine,                             )
                                                           )
and                                                        )
                                                           )
WARREN HEATH, IV, of Morrill, Maine,                       )
                                                           )
and                                                        )
                                                           )
BRADLEY WOLL, of Rockland, Maine,                          )
                                                           )
and                                                        )
                                                           )
DANE WINSLOW, of Camden, Maine,                            )
                                                           )
and                                                        )
                                                           )
JOHN HINKLEY, in his capacity as                           )
Administrator of the Knox County Jail,                     )
of Warren, Maine,                                          )
                                                           )
and                                                        )
                                                           )
KATHY CARVER, in her capacity as Assistant                 )
Administrator of the Knox County Jail,                     )
of Union, Maine,                                           )
                                                           )
and                                                        )
                                                           )
WARREN HEATH, III, of Morrill, Maine,                      )
                                                           )
Defendants                                                 )

        NOW COMES Plaintiff Cathy Penn, as Guardian of Matthew Lalli ("Matthew"), by and

through undersigned counsel, and complains against the above referenced Defendants as follows:

## JURY DEMAND

Plaintiff demands a jury trial.

## INTRODUCTION

1.  This is a civil rights action for money damages under 42 U.S.C. § 1983 against Knox County Defendants, Donna Dennison, in her capacity as Knox County Sheriff, John Hinkley, in his capacity as Administrator of the Knox County Jail, Kathy Carver, in her capacity as Assistant Administrator of the Knox County Jail, and Corrections Officers Julie Stilkey, Angela Escorsio, Christopher Truppa, Robert Wood, Warren Heath, IV, Bradley Woll, Dane Winslow and Warren Heath, III for injuries to Matthew caused by the unconstitutional denial of Matthew's Eighth Amendment right to be free of cruel and unusual punishment and/or the unconstitutional denial of Matthew's Fourteenth Amendment right to Due Process.  Plaintiff also asserts a claim against Defendants under the Maine Tort Claims Act, 14 M.R.S.A. § 8101, *et seq.*

## JURISDICTION AND VENUE

2.  This action is brought pursuant to 42 U.S.C. § 1983 and jurisdiction in the Court is proper under 28 U.S.C. §§ 1331 and 1343.  Supplemental jurisdiction over state law tort claims pursuant to 14 M.R.S.A. § 8101, *et seq.* is proper in the Court under 28 U.S.C. § 1367.

3.  Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4.  Plaintiff Cathy Penn is a resident of Waldoboro, Maine.  Ms. Penn is the Guardian of Matthew duly appointed by the Lincoln County Probate Court on December 2, 2009.

5.  Defendant Knox County is a duly designated county in the State of Maine, formed and existing under the laws of the State of Maine, and is the government entity responsible for operating the Knox County Jail ("Jail") in Rockland, Maine.

6.  Defendant Knox County Sheriff's Department is a Department of Knox County government.

7.  Defendant Knox County Jail is a facility operated by the Knox County Sheriff's Department, a Department of Knox County government.

8.  Defendants Knox County, Knox County Sheriff's Department and Knox County Jail are hereinafter referred to as "County Defendants" and "Knox County Defendants."

9.  Upon information and belief, Donna Dennison ("Sheriff Dennison") of Tenants Harbor, Maine was, at all times material to this Complaint, the Sheriff of Knox County.  She is sued in her official capacity.  The actions of Sheriff Dennison alleged in this Complaint were taken under color of law.

10. Upon information and belief, John Hinkley ("Hinkley") of Warren, Maine was, at all times material to this Complaint, the Administrator of the Knox County Jail.  He is sued in his official capacity.  The actions of Hinkley alleged in this Complaint were taken under color of law.

11. Upon information and belief, Kathy Carver ("Carver") of Union, Maine was, at all times material to this Complaint, the Assistant Administrator of the Knox County Jail.  She is sued in her official capacity.  The actions of Carver alleged in this Complaint were taken under color of law.

12. Upon information and belief, Julie Stilkey ("Stilkey") of Richmond, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  She is sued in her

individual and official capacity.  The actions of Defendant Stilkey alleged in this Complaint were taken under color of law.

13. Upon information and belief, Angela Escorsio ("Escorsio") of Tenants Harbor, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  She is sued in her individual and official capacity.  The actions of Defendant Escorsio alleged in this Complaint were taken under color of law.

14. Upon information and belief, Christopher Truppa ("Truppa") of Augusta, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Truppa alleged in this Complaint were taken under color of law.

15. Upon information and belief, Robert Wood ("Wood") of Warren, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Wood alleged in this Complaint were taken under color of law.

16. Upon information and belief, Warren Heath, IV ("Heath IV") of Morrill, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Heath IV alleged in this Complaint were taken under color of law.

17. Upon information and belief, Bradley Woll ("Woll") of Rockland, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Woll alleged in this Complaint were taken under color of law.

18. Upon information and belief, Dane Winslow ("Winslow") of Camden, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Winslow alleged in this Complaint were taken under color of law.

19. Upon information and belief, Warren Heath, III ("Heath III") of Morrill, Maine, was, at all times material to this Complaint, a Corrections Officer at the Jail.  He is sued in his individual and official capacity.  The actions of Defendant Heath III alleged in this Complaint were taken under color of law.

## FACTS

20. On Saturday, October 3, 2009, Matthew was arrested and taken to the Knox County Jail.

21. During Matthew's booking, Corrections Officer Stilkey completed an Initial Inmate Assessment.

22. The information recorded on the Initial Inmate Assessment indicates that there was a substantial risk that Matthew would commit suicide.

23. In response to the Assessment's question "HAVE YOU EVER ATTEMPTED SUICIDE? (If yes, When?)" Correction Officer Stilkey recorded the following: "2 years ago ran into a legde [sic] 70 miles Per hr."

24. In response to the Assessment's question "HAVE YOU EVER BEEN ADMITTED TO A HOSPITAL FOR PSYCHIATRIC OR EMOTIONAL REASONS?" Corrections Officer Stilkey recorded the following:  "yes Park Unit 2 week [sic] ago."

25. In response to the Assessment's question "HAVE YOU EVER CONSIDERED SUICIDE?  (If yes, When?)" Corrections Officer Stilkey recorded the following:  "yes 1 week ago."

26. In response to the Assessment's question "ARE YOU CURRENTLY FEELING LIKE
    KILLING YOURSELF?" Corrections Officer Stilkey recorded the following:  "not sure
    feels that his life is over."

27. In response to the Assessment's question "DOES THE ARRESTING OR
    TRANSPORTING OFFICER BELIEVE THAT THE INMATE IS CURRENTLY A
    SUICIDAL RISK?" Corrections Officer Stilkey recorded the following: "is very
    depressed I don't think he would if he talks to someone I think he'd be ok."

28. In response to the Assessment's question "INDIVIDUAL SHOWS SIGNS OF
    DEPRESSION, ANXIETY, FEAR, ANGER, EMBARRASMENT OR SHAME (crying,
    flat emotions, pacing, yelling, etc.)." Corrections Officer Stilkey recorded the following:
    "very upset he disappointed his daughter."

29. According to the "Welfare Watch" Log, after intake, "welfare Watched [sic] Placed on
    Matthew Lalli due to statements made during booking Process and medical Reasons Per
    Sgt. Winslow."

30. In the Intake/Release Logs, Corrections Officer Escorsio recorded that on the morning of
    Monday, October 5, 2009, "Inmate Matthew Lalli told me that he has sole custody of his
    daughter and that if he was not allowed to be on the outside then it would be better if he
    wasn't alive at all."

31. According to Corrections Officer Heath IV's notation in the "Welfare Watch" Log,
    shortly after this exchange with Corrections Officer Escorsio, Matthew told Corrections
    Officer Heath that he "was not doing well [and] losing his mind."

32. On the morning of Monday, October 5, 2009, Matthew was brought to the Knox County
    District Court for arraignment.

33. While at the courthouse, Matthew made statements regarding suicide and Corrections Officer Wood responded to what Matthew said.

34. Matthew's statements regarding suicide and Correction Officer Wood's response at the courthouse were heard by the Assistant District Attorney.

35. The Assistant District Attorney wrote a statement about what she had observed at the courthouse.

36. According to the Assistant District Attorney's statement, while at the courthouse Matthew stated "that if he wasn't allowed to bail out, he had nothing to live for."

37. According to the Assistant District Attorney's statement, "[a]fter Mr. Lalli made the comment about not having anything to live for if he didn't bail, Sgt. Wood made a comment about having to go back to the jail and get out the 'turtle suit.'"

38. While before the Judge on October 5, 2009, Matthew was visibly upset.

39. Matthew's condition was observed by Corrections Officers Heath III, Truppa and Wood, all of whom noted the following in separate Incident Reports.

40. In his Incident Report, Corrections Officer Heath III noted that "[w]hen inmate Matthew Lalli went in front of the Judge, he also was upset, arguing and pleading with the Judge to release him as he had a young child at home that he had sole custody of and needed to care for."

41. In this same Incident Report, Corrections Officer Heath III continued "[h]e got more and more agitated and said it would be all over anyway, that he would just end it."

42. In his Incident Report, Corrections Officer Truppa noted that "Inmate Lalli was irate with [the Court's] decision to hold him without bail."

43. In his Incident Report, Corrections Officer Wood noted that "[a]s I entered into the courtroom near the end of [inmate] Lalli's court proceeding he was very aggitated [sic] and vocal because the Judge was holding him with out [sic] bail."

44. According to an Incident Report completed by Corrections Officer Escorsio, she allowed Matthew to make a telephone call after he returned to the Jail from the courthouse.

45. According to an Incident report completed by Corrections Officer Escorsio, she then told Corrections Officer Woll that Matthew "seemed upset coming back from court and on the phone" and asked "if we should move Matthew Lalli over to Detox #124."

46. Upon returning to the Jail from the courthouse, Matthew was observed making a telephone call to Plaintiff Cathy Penn by Corrections Officer Woll.

47. According to an Incident Report completed by Corrections Officer Woll, he heard Matthew state that "if he didn't have his daughter then he would rather die."

48. According to the "Welfare Watch" Log, at 2:35 pm on October 5, 2009, "Matthew Lalli [returned to the Jail] from court."

49. According to the "Welfare Watch" Log, at 3:00 pm on October 5, 2009, "Matthew Lalli [was] put back in cell #135."

50. According to the "Welfare Watch" Log, at 3:29 pm on October 5, 2009, Matthew was found hanging from a privacy partition in his cell.

51. As a result of Matthew's attempted suicide he has suffered a permanent and severe brain injury requiring institutionalized care for the indeterminate future.

52. Matthew is currently twenty-five years old.

53. The cost of Matthew's institutionalized medical care alone is projected to cost over $9,000,000.00.

## COUNT I
## 42 U.S.C. § 1983 Knox County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver

54. Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 53 above as if set forth herein.

55. Knox County operates the Knox County Jail through the Knox County Sheriff's Department and, pursuant to 34-A M.R.S.A. § 1208, must adhere to the Detention and Correctional Standards for Counties and Municipalities, Dept. of Corr., 03-201 CMR Ch. 1, established by the State of Maine, Department of Corrections.

56. Sheriff Dennison, Jail Administrator Hinkley and Assistant Jail Administrator Carver are the policy makers with regard to the Jail and act in that capacity on behalf of the Knox County Commissioners.

57. At all times material to this Complaint, Sheriff Dennison, Jail Administrator Hinkley and Assistant Jail Administrator Carver were responsible for the care and management of the prisoners confined in the Jail and for establishing and implementing appropriate standards, policies, procedures, customs and practices designed to recognize and protect mentally ill and suicidal prisoners and detainees.

58. At all times material to this Complaint, it was the custom, practice and policy of the County Defendants and Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver to operate the Jail without adequate mental health services.

59. At all times material to this Complaint, it was the custom, practice and policy of the County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver to operate the Jail at overcapacity, preventing proper oversight of inmates at risk of suicide.

10

60. At all times material to the Complaint, the County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver failed to comply with State and County standards, policies and procedures, customs and practices mandated by law.

61. At all times material to this Complaint, the County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver operated the Jail under customs and practices in a manner that exhibited deliberate indifference to Matthew's Constitutional rights and to the substantial risk of Matthew's suicide.

62. As a direct result of this deliberate indifference, Matthew was injured.

63. The County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver violated Matthew's Constitutional rights and such violations proximately caused Matthew to be injured.

WHEREFORE, Plaintiff seeks judgment against the Knox County Defendants, Sheriff Dennison, Jail Administrator Hinkley, and Assistant Jail Administrator Carver, jointly and severally, for an amount which is just and reasonable in the premises, together with interest, costs and attorney fees.

### COUNT II
### 42 U.S.C. § 1983 Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll Winslow, and Heath III

64. Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 63 above as if set forth herein.

65. Between Matthew's intake at the Knox County Jail on October 3, 2009 and Matthew's attempted suicide on October 5, 2009, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III observed Matthew's condition.

66. Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III had actual knowledge of Matthew's substantial risk of suicide.

67. Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III did not place Matthew on suicide watch.

68. Corrections Officers Stilkey, Escorsio, Truppa, Wood IV, Heath, Woll, Winslow, and Heath III did not place Matthew in a suicide prevention cell.

69. Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III did not place Matthew in a suicide smock.

70. Corrections Officers Stilkey, Escorsio, Truppa, Wood IV, Heath, Woll, Winslow, and Heath III did not remove Matthew's possessions.

71. Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III did not make a mental health referral for Matthew.

72. Despite actual knowledge of Matthew's substantial risk of suicide, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III failed to provide a reasonable response to this risk by not placing Matthew on suicide watch.

73. Despite actual knowledge of Matthew's substantial risk of suicide, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III failed to provide a reasonable response to this risk by not placing Matthew in a suicide prevention cell.

74. Despite actual knowledge of Matthew's substantial risk of suicide, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III failed to provide a reasonable response to this risk by not placing Matthew in a suicide smock.

12

75. Despite actual knowledge of Matthew's substantial risk of suicide, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III failed to provide a reasonable response to this risk by not removing Matthew's possessions.

76. Despite actual knowledge of Matthew's substantial risk of suicide, Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III failed to provide a reasonable response to this risk by not making a mental health referral for Matthew.

77. The actions of Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III in light of their knowledge of Matthew's substantial risk of suicide constitute deliberate indifference to Matthew's Constitutional rights and to Matthew's substantial risk of suicide.

78. As a direct result of this deliberate indifference, Matthew was injured.

79. Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III violated Matthew's Constitutional rights and such violations proximately caused Matthew to be injured.

WHEREFORE, Plaintiff seeks judgment against Corrections Officers Stilkey, Escorsio, Truppa, Wood, Heath IV, Woll, Winslow, and Heath III jointly and severally, for an amount which is just and reasonable in the premises, together with interest, costs and attorney fees.

## COUNT III
## Maine Tort Claims Act

80. Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 79 above as if set forth herein.

81. Defendants breached their duties of reasonable care by failing to provide Matthew with mental health services in compliance with Department of Corrections and County standards, policies and procedures, customs and practices.

82. Defendants breached their duty of care and were negligent by failing to provide Matthew with mandated services.

83. Defendants' failure to place Matthew on suicide watch proximately caused Matthew to be injured.

84. Defendants' failure to place Matthew in a suicide prevention cell proximately caused Matthew to be injured.

85. Defendants' failure to place Matthew in a suicide smock proximately caused Matthew to be injured.

86. Defendants' failure to remove Matthew's possessions proximately caused Matthew to be injured.

87. Defendants' failure to provide Matthew with a mental health referral proximately caused Matthew to be injured.

88. Plaintiff's claim for damages for the injuries sustained by Matthew are available under the Maine Tort Claims Act, 14 M.R.S.A. § 8101 *et seq.*

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for an amount which is just and reasonable in the premises, together with interest, costs and attorney fees.

## COUNT IV
### Punitive Damages

89. Plaintiff repeats and realleges each and every allegation made in paragraphs 1 through 88 above as if set forth herein.

14

90. In committing the above alleged acts and omissions the Defendants acted with express or implied malice sufficient to justify an award of punitive damages.

WHEREFORE, Plaintiff seeks judgment against Defendants, jointly and severally, for punitive damages, together with interest, costs and attorney fees.

Dated:  April 27, 2012

/s/ Daniel J. Stevens
Daniel J. Stevens
Pierce Atwood LLP
77 Winthrop Street
Augusta, ME 04330
207-622-6311
dstevens@pierceatwood.com

Attorneys for Plaintiff

15